[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-13472

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 3, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-00810-CV-JOF-1

RONALD J. CAMPBELL, JR.,
KRISTIE CAMPBELL,

Plaintiffs-Appellants,

GEORGIA POWER COMPANY,

Intervenor-Plaintiff-
Appellant,

versus

ALTEC INDUSTRIES, INC.,
TEXAS HYDRAULICS, INC.,
JOHN DOE CORPORATION #1,
JOHN DOE CORPORATION #2,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(May 3, 2010)

Before TJOFLAT, WILSON and EBEL,[*] Circuit Judges.

PER CURIAM:

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF GEORGIA PURSUANT TO O.C.G.A. § 15-2-9.

TO THE SUPREME COURT OF GEORGIA AND ITS HONORABLE JUSTICES:

This case involves a question of Georgia law that is determinative of this appeal but not clearly settled by controlling precedent of the Supreme Court of Georgia. We therefore certify the question for resolution by the Supreme Court.

Ronald J. Campbell, Jr., a Georgia Power Company employee, was injured while operating an A77-T bucket truck when the lower boom lift cylinder failed on June 30, 2006. Altec Industries, Inc. ("Altec") manufactured and sold the bucket truck to Georgia Power Company; Texas Hydraulics, Inc. ("THI") manufactured the defective lift cylinder, which was developed jointly by Altec and THI for use in the bucket truck. On February 4, 2008, Ronald J. Campbell, Jr. and his wife, Kristie Campbell (collectively, "Campbell") brought this action against

---

[*] Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit, sitting by designation.

Altec and THI on theories of defective design, manufacturing, and assembly of the

bucket truck under principles of strict liability and negligence.[1]

O.C.G.A. § 51-1-11 provides a cause of action in tort for a person injured by

---

[1] Campbell also sued Altec and THI for failure to warn of the dangerous propensity of the bucket truck. Following the district court's grant of summary judgment on Campbell's product liability claims, Campbell moved the district court pursuant to Fed. R. Civ. P. 15(a)(2)—which permits a party to "amend its pleading only with the opposing party's written consent or the court's leave"—to withdraw the only remaining claim, the failure to warn claim. Campbell asserted that the grant of this motion would make the district court's judgment final and appealable. Campbell also stated on the record that he would not renew the failure to warn claim after it was withdrawn from the case.

The jurisdictional issue of whether the district court's judgment was final and appealable pursuant to 28 U.S.C. § 1291 was carried with this appeal. A preliminary issue was raised as to whether amendment pursuant to Rule 15(a) was the correct way to handle the dismissal of the failure to warn claim, or the dismissal should have been pursuant to Federal Rule of Civil Procedure 41, which provides for the dismissal of actions. Pursuant to subsection 41(a)(2), if the requirements of subsection 41(a)(1) are not satisfied (as would be the case here), "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Our circuit precedent dictates that

> Rule 41 allows a plaintiff to dismiss all of his claims against a particular defendant; its text does not permit plaintiffs to pick and choose, dismissing only particular claims within an action. "A plaintiff wishing to eliminate particular claims or issues from the action should amend the complaint under Rule 15(a) rather than dismiss under Rule 41(a)."

Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1106 (11th Cir. 2004) (quoting 8 Moore's Federal Practice § 41.21[2], at 41–32).

Rule 15, therefore, was the correct way to dismiss this claim. That does not address, however, the finality of the dismissal. "Unless the plaintiff's motion or the district court's order stipulates otherwise, a claim dropped through a Rule 15 amendment—or, for that matter, an action dropped pursuant to Rule 41(a)—is dismissed without prejudice." Id. at 1107. While the district court's order does not state that the dismissal was with prejudice, the grant of the Rule 15(a) motion, coupled with the announcement on the record that Campbell would not renew his failure to warn claim, operated as the functional equivalent of a dismissal with prejudice of this claim—turning the district court's summary judgment order into a final judgment. We therefore have jurisdiction under 28 U.S.C. § 1291, which provides that "courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States."

personal property against the property's manufacturer if the condition in which the property was sold is the proximate cause of the injury sustained. O.C.G.A. § 51-1-11(b)(1). The statute, however, imposes a time limit on bringing an action under subsection (b)(1); the action must commence within "ten years from the date of the first sale for use or consumption of the personal property causing or otherwise bringing about the injury." Id. § 51-1-11(b)(2). Altec and THI moved the court for summary judgment on all of Campbell's product liability claims based on this provision, known as the statute of repose.

The district court granted Campbell's motion, finding that the statute of repose began to run on January 14, 1998, more than ten years before Campbell's February 4, 2008 lawsuit. On January 14, 1998, Altec placed the assembled lift cylinder, which caused Campbell's injury, on a test chassis and operated it. The final assembly of the lift cylinder and placement onto the bucket truck, however, did not occur until sometime in March 1998. The initial delivery to the ultimate purchaser, Georgia Power Company, then occurred in April 1998.

In a case where injury arose from a metal plate put in a patient's back, the Georgia Supreme Court held that the statute of repose did not begin to run when the hospital purchased the plate, but rather when the plate was removed from inventory and sold to the plaintiff "for its actual intended purpose of placement in

4

his back." Pafford v. Biomet, 448 S.E. 2d 347, 349 (Ga. 1994).[2]  On the other hand, the Georgia Court of Appeals later held, in the case of an alleged problem with a car switch, that the statute of repose began to run when the car company installed the switch in the car and the car became operable, not when the car was sold.  Johnson v. Ford Motor Co., 637 S.E.2d 202, 206 (Ga. Ct. App. 2006).[3]  Neither decision seems to definitively resolve the issue of which of the following constitutes the "first sale for use or consumption of the personal property causing or otherwise bringing about the injury": the completion or test of the lift cylinder, the completed assembly of the bucket truck, or the delivery of the finished bucket truck to the initial purchaser.  Because resolution of this question would determine whether Campbell can pursue his cause of action and, thus, determines this appeal,[4] and "no clear controlling precedent" exists, see § O.C.G.A. 15-2-9, we

---

[2]  In so holding, the court "recognize[d] a distinction between the individual who initially purchased a manufactured product for mere static retention in his inventory and that individual whose actual employment of the product was ultimately intended."  Pafford, 448 S.E.2d at 348.  It found that the relevant "first 'use or consumption'" would be by the individual who ultimately intended to use the product.  This distinction does not apply here.

[3]  If a conflict exists between these decisions, Pafford would control because it is a ruling by the Georgia Supreme Court.  The Georgia Supreme Court has not addressed whether the intermediate court's ruling in Johnson conflicted with Pafford.

[4]  As noted, if the time when the lift cylinder was tested commenced the statute of repose period, as the district court held, Campbell's suit would be untimely.  If the statute was not triggered until either the bucket truck's assembly, or the bucket truck's delivery to the initial purchaser, Campbell brought suit within ten years of those events, so the suit would be timely.

5

certify the following question to the Supreme Court of Georgia:

IN A STRICT LIABILITY OR NEGLIGENCE ACTION, DOES THE STATUTE OF REPOSE IN O.C.G.A. § 51-1-11 BEGIN RUNNING WHEN (1) A COMPONENT PART CAUSING AN INJURY IS ASSEMBLED OR TESTED, (2) A FINISHED PRODUCT, WHICH INCLUDES AN INJURING COMPONENT PART, IS ASSEMBLED, OR (3) A FINISHED PRODUCT, WHICH INCLUDES AN INJURING COMPONENT PART, IS DELIVERED TO ITS INITIAL PURCHASER?

We do not intend the particular phrasing of this question to limit the court in its consideration of the problems posed by this case, or even to constrain its choice of the triggering event to these three options. In order to assist the court's consideration of the question, we are providing the court with the entire record and the parties' briefs on appeal.

IT IS SO ORDERED.